STATE OF NORTH CAROLINA on RELATION OF THE UTILITIES COMMISSION, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 28 March, 1951.)

**1. Utilities Commission § 5—**

While the orders of the Utilities Commission must be considered on appeal as *prima facie* just and reasonable, appellant nevertheless may show that the order appealed from was not supported by competent, material and substantial evidence upon the entire record, and thus rebut the *prima facie* effect of the order. G.S. 62-26.10.

**2. Carriers § 1½—**

The power of the Utilities Commission to require transportation companies to maintain substantial service to the public in the performance of

the absolute duty to provide transportation facilities will not be denied even though the service will be unremunerative when singled out and related only to a particular instance or locality if the loss is incidental and collateral when viewed in relation to and as a part of all its transportation operations as a whole.

3. Same—

Where the discontinuance of an agency at a railroad station would result only in requiring that incoming freight be prepaid and in inconvenience to individual shippers from possible delay in notifying consignees of the arrival of freight, though otherwise the same freight service would be available, *held* the maintenance of the agency is incidental to the carrier's primary and absolute duty of furnishing transportation facilities, and loss to the carrier is properly considered in determining whether convenience to individuals and to the public outweigh the benefit which would inure to the carrier from the abandonment of the agency.

4. Same—

No absolute rule can be set for determining a carrier's application to discontinue a particular service, but each case must be considered upon its own facts in accord with the criterion of reasonableness and justice to determine whether public convenience and necessity require the service to be maintained or permit its discontinuance, weighing the benefit to the carrier of abandonment against the inconvenience to which individual shippers may be subjected.

5. Same—Record held not to support order denying carrier's application to discontinue agency at station.

Upon the undisputed evidence it appeared that the maintenance of an agency at a station by the carrier resulted in loss to the carrier and that the discontinuance of the agency would result only in inconvenience to the individual shippers, but that the public necessity would be met by the continuance of substantially the same freight service without an agent. *Held:* The conclusion of the Utilities Commission that the public convenience and necessity required the denial of the carrier's application to discontinue the agency is not supported by material and substantial evidence upon the whole record as being reasonable and just, and judgment affirming its order denying the application is reversed.

APPEAL by defendant Railroad Company from *Morris, J.,* September Term, 1950, of PITT. Reversed.

This was a proceeding instituted before the North Carolina Utilities Commission by the application of the Atlantic Coast Line Railroad Company for permission to close its agency at Stokes, North Carolina.

The application was denied by order of the Utilities Commission (two members dissenting), exceptions to the order overruled, and rehearing denied. On appeal to the Superior Court, the order of the Utilities Commission was affirmed and the Atlantic Coast Line Railroad Company appealed to this Court.

*Attorney-General McMullan and Assistant Attorney-General Paylor for the State of North Carolina ex rel. North Carolina Utilities Commission, appellee.*

*Charles Cook Howell and Murray Allen for Atlantic Coast Line Railroad Company, appellant.*

DEVIN, J.   The application of the defendant Railroad Company filed with the Utilities Commission was not for the purpose of obtaining authority to close its railroad station at Stokes, but to close the agency, that is, to dispense with the services of a local agent at that station, for the reasons set out in the application.

The facts were not controverted.   The question presented to us for decision is whether these facts afford substantial evidence, in view of the entire record, which would support the conclusion reached by the court below that public convenience and necessity warranted the continued operation of the agency, and that the order of the Utilities Commission denying application for discontinuance of this service was reasonable and just.

Stokes is a village of 325 inhabitants, without manufacturing or processing industry, situated in an agricultural community, traversed by paved roads.   There are only six business establishments, and these are principally devoted to merchandising, including the handling and distributing of commercial fertilizers.   Railroad freight transportation service is afforded by the defendant's branch line from Parmalee to Washington, North Carolina.   No passenger service is maintained.   Parmalee is seven miles northwest and Washington is sixteen miles southeast.   It appeared that for the twelve months' period ended 30 September, 1949, two carloads were shipped from Stokes and ninety received.   Of those received seventy-two contained fertilizer or fertilizer material.   It was admitted, and so found by the Utilities Commission, that after giving the station of Stokes credit for all railroad revenues derived from shipments originating and received at that station, the loss for the year was $572.90.   The expense incurred for the salary and expense of the local agent, which under wage agreement the defendant could not modify, was $3,339.14 per annum.   The amount of time necessary for the performance of all the duties of an agent at this station would not exceed on an average thirty minutes per day.   There was also uncontradicted evidence that in spite of effort over a period of ten years there had been no increase in freight shipments to and from this station, and that there was no possibility of expanding the railroad business or earnings there, and that on the other hand in small communities like this transportation by rail increasingly suffered from competition with motor vehicles operating over improved highways.

It also appeared that the absence of a local agent at Stokes would not affect freight shipments to and from that station. The same freight service would be available. The same freight trains would run, stopping on same schedules at Stokes. The only difference would be that incoming freight must be prepaid, and that notice of arrival would be mailed from Washington instead of Stokes, and that waybills and receipts for freight from Stokes would be handled by the train conductor. Less than carload shipments would be unloaded and deposited in the station building, and consignee notified. It also appeared that a large proportion of freight shipments to Stokes, particularly fertilizer, now arrives prepaid.

After notice of defendant's application was given, only one person appeared in opposition, Mr. W. F. Stokes of the firm of Stokes & Congleton, merchants, who received sixty-six of the ninety cars shipped to Stokes station during the year referred to. Mr. Stokes expressed the opinion that there was public need for the continuance of the agency, and that handling carload and other freight shipments without a local agent would cause inconvenience and sometimes delay, and that if the agency were discontinued it would result in his firm's transferring its freight business to motor carriers.

The Utilities Commission was of opinion that notwithstanding the applicant sustained a loss of $572.90 during the twelve months used as a basis this was not a sufficient showing to deprive the community of agency service to which it had been accustomed, and that if the agency were discontinued there would be no adequate substitute as there were no regular truck routes operating into Stokes, and that handling freight through other agencies and using train conductors would be unsatisfactory from the standpoint of the community. It was concluded that the public convenience and necessity of the agency at Stokes was sufficiently shown to warrant the continued operation of the agency. The application of the defendant was accordingly denied. Defendant filed numerous exceptions to the order of the Commission, and, among others, that there was no substantial evidence that public convenience and necessity warranted continuance of the agency at Stokes, or that the requirement that applicant continue to maintain such agency at a loss, under the circumstances here disclosed, was reasonable and just.

These exceptions having been overruled and petition to rehear denied (G.S. 62-26.6), defendant appealed to the Superior Court where the order of the Utilities Commission was affirmed. That court in affirming the Commission's order expressed the view that the fact that there were no regular motor carrier routes into the community and the absence of an adequate substitute for the service now rendered by the applicant bore "heavily upon the question of public convenience and necessity and upon

the reasonableness and justice of the order entered by the Utilities Commission."

By statute (G.S. 62-26.10) upon appeal the orders made by the Utilities Commission "shall be *prima facie* just and reasonable" (*Utilities Com. v. Great Southern Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201), but this does not preclude the appellant from showing that the evidence offered rebuts the *prima facie* effect of the order, and that the order was "unsupported by competent, material and substantial evidence in view of the entire record." Hence the question posed for our consideration is whether the evidence was sufficient to warrant the conclusion that public convenience and necessity required maintenance, at a substantial loss, of agency service at Stokes, and whether under the circumstances here shown the order of the Utilities Commission denying defendant's application was reasonable and just.

The power conferred by statute upon the Utilities Commission to require transportation companies to maintain substantial service to the public in the performance of an absolute duty will not be denied even though the service may be unremunerative when singled out and related only to a particular instance or locality, if the loss be viewed in relation to and as a part of the over-all operations of transportation, rather than as incidental and collateral thereto. *Washington ex rel. Oregon R. & N. Co. v. Fairchild,* 224 U.S. 510. The distinction was pointed out in *Kurn v. State,* 175 Okl. 379, where it was held as correctly stated in the syllabus: "In the performance of an absolute duty by the railway company the question of expense is not to be considered, but where the duty sought to be enforced is one of additional convenience rather than necessity, the question of expense to the company and relative benefit to the public is the deciding factor and may not be disregarded." This principle was again stated in same language in *Thomson v. Nebraska State Railway Com.,* 143 Neb. 52, and in *St. Louis-S. F. R. Co. v. State,* 195 Okl. 41.

This question was considered by the Supreme Court of South Carolina in *Southern Railway v. Public Service Commission,* 195 S.C. 247, 10 S.E. 2d 769, where the Court used this language: "And as we have pointed out there is clearly no absolute duty requiring a railroad company to maintain an agent at every one of its stations, for the simple reason that nonagency stations may provide reasonably sufficient service, taking into consideration the amount of the public patronage and other surrounding conditions. In other words, the duty of maintaining an agent is at most incidental to the railroad company's primary and absolute duty of furnishing transportation services. Manifestly in a case of this kind the question of loss is of greater importance." The same view was expressed in *Seward v. Denver & R. G. R. Co.,* 17 N.M. 557, and in the case of *A. C. L. R. R. Co. v. King,* 49 So. 2d 89.

In *A. C. L. R. R. Co. v. Commonwealth of Virginia,* 191 Va. 241, 61 S.E. 2d 5, the Supreme Court of Appeals of Virginia considered the application of the Railroad Company for authority to close its station at Carson, Virginia, as an agency station for the reason, as in our case, that it was being maintained at a loss. In a well considered opinion by *Chief Justice Hudgins* the denial of the railroad's application by the State Corporation Commission was reversed as unreasonable and unjust. From this opinion we quote: "There is no conflict in the evidence. Considering all of the facts and circumstances, we cannot escape the conclusion that it would be unreasonable and unjust to require appellant to maintain Carson as an agency station when the cost of such service is out of proportion to the revenue derived from that portion of the public benefited thereby, especially where it is shown, as in this case, that the substituted service proposed will afford the same essential transportation service, but at less convenience to the prospective passengers and shippers. This conclusion is supported by the principles applied in the following cases from other jurisdictions" (citing numerous cases).

In the case at bar the Utilities Commission found that in spite of loss to the applicant therefrom the public convenience and necessity for agency service at Stokes warranted its continued maintenance, and the Superior Court approved. The statute G.S. 62-39 empowers the Utilities Commission to require transportation companies "to establish and maintain all such public services and conveniences as may be reasonable and just." *Utilities Com. v. Great Southern Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201.

Questions of convenience to individuals and to the public find their limitations in the criterion of reasonableness and justice. No absolute rule can be set up and applied to all cases. The facts in each case must be considered to determine whether public convenience and necessity require the service to be maintained or permit its discontinuance. The benefit to the one of the abandonment must be weighed against the inconvenience to which the other may be subjected. The question to be decided is whether the loss resulting from the agency is out of proportion to any benefit to an individual or the public. In *Illinois Central R. Co. et al. v. Illinois Commerce Commission,* 397 Ill. 323, it was said, "The maintaining of an uneconomic service resulting in an economic waste cannot be justified or excused by the showing that the service has been in the convenience and necessity of some individual. The convenience and necessity required are those of the public and not of an individual or individuals." And in a later case decided by that Court, *Illinois Cent. R. Co. v. Illinois Commerce Commission,* 399 Ill. 67, it was said: "Recent decisions of this Court have established the rule that it is unreasonable to require the maintenance of an agency station where the cost of the

service is out of proportion to the revenue derived from the portion of the public benefited thereby, particularly where a substitute service may be provided affording the same essential, although less convenient service."

In the recent case of *Atlantic Coast Line R. Co. v. King,* 49 So. 2d 89, the Supreme Court of Florida reversed the order of the Utilities Commission of that state denying plaintiff's application to discontinue certain passenger train stops, the Court saying: "The disparity between the inconvenience to such a limited cross city traffic and the cost, delay and burden to appellant is so out of proportion that we think the application for conditional service was reasonable and just and should have been granted."

While on the hearing before the Utilities Commission the principal receiver of freight at Stokes expressed apprehension that inconvenience would result from discontinuance of agency service at that station, this would seem to involve individual rather than public inconvenience, as the same essential service would be retained as to both incoming and outgoing freight though with some inconvenience to the individual shipper, and raises the question whether the court should require the railroad to continue this service at a loss of $572.90 per annum, in order to save one or more shippers from inconvenience of the character about which the shipper testified.

We are inclined to the view, after considering the evidence heard by the Utilities Commission which was not in conflict, and on the entire record before us, that the railroad freight service which will be continued at Stokes if defendant's application be allowed, will measurably provide for the needs and convenience of the public, and that the disparity between the inconvenience resulting to the complaining shipper and the burden now imposed on the railroad tends to negative the conclusion reached below that it was reasonable and just to require the maintenance of agency service at a substantial loss to the applicant. *A. C. L. R. R. Co. v. Commonwealth of Virginia, supra.*

We think the finding of the Utilities Commission affirmed by the court below is not supported by material and substantial evidence, and that the order denying application for discontinuance of agency service at Stokes under the evidence did not measure up to the standard of reasonableness and justice required by the statute. The judgment affirming the order of the Utilities Commission is reversed and the cause remanded for appropriate orders in accord with this opinion.

Reversed.