STATE OF NORTH CAROLINA ON RELATION OF THE UTILITIES COMMIS-
SION, PLAINTIFF, v. ATLANTIC COAST LINE RAILROAD COMPANY,
DEFENDANT.

(Filed 19 March, 1952.)

**1. Utilities Commission § 5—**

An order of the Utilities Commission is *prima facie* just and reasonable, and an appeal therefrom is limited to review, without a jury, of the record as certified by the Commission, and its order, supported by findings, may be reversed or modified only if substantial rights have been prejudiced because of findings and conclusions not supported by competent, material and substantive evidence. G.S. 62-26.10.

**2. Utilities Commission § 2—**

The Utilities Commission has authority to compel common carriers to maintain all such public service facilities and conveniences as may be reasonable and just. G.S. 62-39.

**3. Carriers § 1 ½ —**

Each application by a common carrier to be permitted to discontinue services or facilities must be determined in accordance with the facts and circumstances of the particular case, weighing the benefit to the carrier against the inconvenience to the public which would result from such discontinuance, and the fact that the particular service is maintained at a loss is not determinative when such service is a part of over-all operations which result in a profit.

**4. Same—Evidence held to support finding of Utilities Commission that public convenience required continuance of station agency.**

The evidence before the Utilities Commission was to the effect that discontinuance of agency service at the railroad station in question would not only result in inconvenience to consignees in that all freight shipments to them would have to be prepaid, but also that railway express service would be adversely affected and telegraph service discontinued, with further evidence that substantial business was transacted by the agency and that its discontinuance would be detrimental to the community. *Held:* The evi-

dence was sufficient to support the Commission's finding that public convenience and necessity required the continuance of the agency, notwithstanding that its maintenance results in a small loss to the carrier, and order of the Commission denying the carrier's application to discontinue the agency should have been affirmed.

APPEAL by plaintiff from *Harris, J.,* June Term, 1951, of WILSON. Reversed.

This was a proceeding instituted before the North Carolina Utilities Commission by the application of the Atlantic Coast Line Railroad Company for permission to discontinue agency service at Lucama. At the hearing certain citizens of Lucama entered appearance by counsel in opposition. Upon the evidence presented the Utilities Commission found that a non-agency service at Lucama would fail to serve the needs of the public and that public convenience and necessity required continuance of agency service at that station. Accordingly the application of defendant was denied.

On appeal to the Superior Court the order of the Utilities Commission was reversed and the Commission directed to enter order permitting discontinuance of agency service at Lucama.

Plaintiff appealed to this Court.

*Attorney-General McMullan and Assistant Attorney-General Paylor for plaintiff, appellant.*

*Gardner, Connor & Lee for protestants.*

*R. E. Browne, III, and Murray Allen for defendant, appellee.*

*Charles Cook Howell, of counsel, for defendant, appellee.*

DEVIN, C. J. The statutes governing procedure before the Utilities Commission prescribe the rules and extent of review on appeal from an order of the Commission. The statute now codified as G.S. 62-26.10 provides that on such appeal to the Superior Court the review shall be on the record certified by the Commission and heard by the judge without a jury who may reverse or modify the decision of the Commission if substantial rights have been prejudiced because of findings and conclusions which are unsupported by competent, material and substantial evidence. This statute further provides that upon any appeal to the Superior Court the finding, determination or order of the Commission shall be *"prima facie* just and reasonable."

In the case at bar, on the evidence presented the Utilities Commission denied the application of defendant railroad for permission to discontinue agency service at Lucama, finding that public convenience and necessity required the continuance of agency service at this station, and that a non-agency station there would fail to serve the needs of the public.

On appeal, the judge below reversed the finding and order of the Utilities Commission, on the ground that there was no substantial evidence on the record which would support the conclusion reached by the Commission that public convenience and necessity required continuance of agency service at Lucama. The judge stated in the judgment that his conclusion was influenced by the decision of this Court in *Utilities Com. v. R. R.,* 233 N.C. 365, 64 S.E. 2d 272, where the application of the railroad to discontinue agency service at Stokes was considered and the order of the Utilities Commission denying the application reversed. In that case, however, it was said: "No absolute rule can be set up and applied to all cases. The facts in each case must be considered to determine whether public convenience and necessity require the service to be maintained or permit its discontinuance. The benefit to the one of the abandonment must be weighed against the inconvenience to which the other may be subjected."

The statute confers upon the Utilities Commission the power to require transportation companies to establish and maintain all such public service facilities and conveniences as may be reasonable and just, G.S. 62-39, and the determination and order of the Commission in the performance of this duty must be considered *prima facie* as reasonable and just. This, however, does not preclude the transportation company affected from showing that the order was unsupported by competent, material and substantial evidence. *Utilities Com. v. Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201. The power conferred upon the Utilities Commission to require transportation companies to maintain substantial service to the public will not be denied even though the service may be unremunerative when singled out and related only to a particular instance or locality, if the loss be viewed in relation to and as a part of the over-all operations of profitable transportation. *Utilities Com. v. R. R.,* 233 N.C. 365, 64 S.E. 2d 272. "The question in each case must be determined in the light of all the facts, and with a just regard to the advantage to be derived by the public and the expense to be incurred by the carrier." *Washington ex rel. Oregon R. & N. Co. v. Fairchild,* 224 U.S. 510.

Hence, the determination of the propriety of the judgment below depends upon the particular facts shown at the hearing before the Commission.

It appears that Lucama is an incorporated town having a population of 425, and is situated in a prosperous agricultural section. The township of which it is a part has a population of 2,774. It is on the main north-south line of the Atlantic Coast Line Railroad, 8.2 miles south of Wilson and 7.2 miles north of Kenly. Agency service for passengers and freight has been maintained here for many years, and in connection therewith Railway Express Agency and a Western Union Telegraph office are maintained in the station and handled by the railroad agent.

The evidence offered by defendant tended to show that the revenue from freight handled to and from Lucama for the twelve months' period ended 30 June, 1951, amounted to $10,546.04. This was calculated from total receipts of about $19,000 as Atlantic Coast Line's share of the total revenue after deducting the proportion due other carriers. The revenue from passenger service was $325.44, and the number of passengers served 820. With other items the net revenue attributable to Lucama was $10,890.70. The cost of transportation, calculated according to the average for the entire Atlantic Coast Line system at the ratio of 77.92%, as against this revenue, was $8,486.03, leaving credit balance of $2,404.67 exclusive of its proportion of fixed charges and taxes. But the salary and incidentals of the station agent was $3,478.47 per annum, showing a net loss for the year of $1,073.80 or $89.48 per month. The salary of the station agent fixed by the terms of the railroad's contract with labor unions could not be reduced, notwithstanding the small amount of work required at this station. Discontinuing agency service would not prevent shipments of freight to and from this station or eliminate passenger service as the same trains would continue to run, but it would occasion some inconvenience as the charges on incoming freight would have to be prepaid and notices mailed from other stations, and passengers would have to pay fares on trains. Railway express service would be affected and telegraph service discontinued. The defendant's superintendent was of opinion that there was no possibility of increased business for the railroad from this station. Numerous trucks and buses operate in and through Lucama by which freight and passenger service would continue to be available. The figures furnished by the railroad were accepted by the Commission and considered in the findings and conclusions of the Commission.

Counsel for citizens of Lucama offered the testimony of several witnesses in opposition to defendant's application. Groves Simpson testified he was in the cotton gin and coal yard business, and that he received freight over defendant's lines and paid bills amounting to $11,000 or $12,000 a year for last three years, 98% of freight received coming collect; that the closing of the station would cause a "lot of inconvenience," and that his business with the Railroad has shown an increase. Robert Pope, the Postmaster, said closing the agency would cause inconvenience and would be detrimental to the community. J. R. Lucas, Mayor of Lucama, testified there were 34 retail businesses in or near the town; that he paid for freight received in carload and less than carload lots, collect and prepaid, $3,042.36; that his freight business has increased for last few years; that business conditions in Lucama have been steadily on the increase, and the effect of closing the agency would be bad; that some shipments are carried by truck, but there is only one regular truck line

operating there. Dewey Simpson testified there was a bank in Lucama with assets of $2,500,000; that he received fertilizer in carload lots prepaid; that discontinuance of agency service "would work hardship on a lot of farmers around there as well as folks in town I think."

E. C. Mercer, the railroad agent, testified that the revenue received from freight shipments for the year totaled $18,934.32, not including passenger business; that no truck line has an agency at Lucama. L. V. Allred, agent in Raleigh of Railway Express Agency, testified the agency at Lucama handled an average of 52 shipments per month with revenue receipts of $122.14 per month; that his agency had joined the Railroad in application for discontinuance of service, but would not have done so if the Railroad had not applied. Protestants also filed in the record statements from Rock Ridge Roller Mills that it paid freight at Lucama station for year 1949 amounting to $2,793.95. Also filed was a statement from Bass Brothers that they paid freight on shipments received collect $1,185.43, prepaid $600.57.

It is obvious that the factual situation at Lucama is materially different from that shown by the record in the *Stokes* case relied on by defendant, and that the decision in that case is not controlling upon the facts shown in the case at bar.

There was substantial evidence presented at the hearing to support the finding of the Utilities Commission that a non-agency service station at Lucama would fail to serve the needs of the public, and that public convenience and necessity required continuance of agency service. The order of the Commission based on these findings should be upheld. The Superior Court was in error in reversing this order and directing allowance of defendant's application.

Judgment reversed.