STATE OF NORTH CAROLINA ON RELATION OF THE UTILITIES COMMISSION v. ATLANTIC COAST LINE RAILROAD COMPANY, DEFENDANT APPELLANT.

(Filed 2 December, 1953.)

**1. Utilities Commission § 5—**

An order of the Utilities Commission is *prima facie* just and reasonable, and an appeal therefrom is limited to review, without a jury, of the record as certified by the Commission, and its order, supported by findings, may be reversed or modified only if substantial rights have been prejudiced because of findings and conclusions not supported by competent, material and substantive evidence. G.S. 62-26.10.

**2. Utilities Commission § 2—**

The Utilities Commission has authority to compel common carriers to maintain all such public service facilities and conveniences as may be reasonable and just. G.S. 62-39.

**3. Carriers § 1½—**

Each application by a common carrier to be permitted to discontinue services or facilities must be determined in accordance with the facts and circumstances of the particular case, weighing the benefit to the carrier against the inconvenience to the public which would result from such discontinuance.

**4. Utilities Commission § 5—**

The rule that an order of the Utilities Commission must be considered *prima facie* reasonable and just does not preclude the common carrier affected thereby from showing that the order is unsupported by competent, material and substantive evidence.

**5. Same—**

> In this application by a railroad company to change one of its two north
> and south bound trains operated through a particular municipality from
> regular stops to flag stops, *held* the evidence is sufficient to support the
> findings of the Utilities Commission that the slight advantage to the car-
> rier and slight improvement in service which would result from the change
> was insufficient to outweigh the small amount of public convenience and
> necessity in having the trains stop regularly, and the order of the Utilities
> Commission denying the application was properly affirmed.

APPEAL by defendant from *Frizzelle, J.,* at April Term, 1953, of
WAYNE.

Proceeding instituted before the North Carolina Utilities Commission
by application of the Atlantic Coast Line Railroad Company for permis-
sion to change Fremont, North Carolina, from a regular stop to a flag
stop for passenger trains Nos. 48 and 49.

At hearing on 18 June, 1952, before a single commissioner, the appli-
cant, Atlantic Coast Line Railroad Company, offered evidence in support
of its application. Protestants, the town of Fremont and citizens of the
town of Fremont, appeared, and offered evidence in opposition to the
application.

Thereupon the hearing commissioner makes this statement of facts:
"The Atlantic Coast Line Railroad Company, Applicant herein, operates
four daily passenger trains, two in each direction, between the cities of
Wilmington and Rocky Mount, North Carolina. All of these trains are
regular conventional type trains, consisting of engines, baggage cars,
express cars, mail cars, coaches for white and colored passengers, and
carry Pullman cars which operate between Wilmington and New York,
and between Wilmington and Washington, D. C. The trains are num-
bered 41 and 42, and 48 and 49. Trains 42 and 48 are northbound, that
is, leave Wilmington and operate to Rocky Mount, while Trains 41 and
49 operate from Rocky Mount southbound to Wilmington.

"The Wilmington-Rocky Mount Division, proceeds from Wilmington
to Contentnea, a junction point with the main line of the Coast Line
operating between Richmond-Rocky Mount and Florence, South Carolina.
The trains operating over the Wilmington-Rocky Mount Division switch
from the tracks coming from Wilmington at Contentnea Junction over
to the main line, and thus proceed on to Rocky Mount.

"Train No. 42 leaves Wilmington at 7:30 p.m. daily, arrives at Con-
tentnea at 11:14 p.m. and at Rocky Mount at 11:55 p.m. Train No. 41
leaves Rocky Mount daily at 2:30 a.m., passes through Contentnea at
3:51 a.m. and arrives in Wilmington at 7:30 a.m. Train No. 48 leaves
Wilmington at 3:40 p.m. daily, arrives in Contentnea at 6:17 p.m., and
at Rocky Mount at 6:55 p.m. Train No. 49 leaves Rocky Mount daily at

9 :35 a.m., and passes through Contentnea at 10 :12 a.m. and arrives at Wilmington at 1 :15 p.m.

"The cities of Goldsboro and Wilson are located along the line traveled by these four passenger trains, and Fremont, North Carolina, a town of 1395 residents (1950 census) is located on the line of the Atlantic Coast Line, Wilmington to Rocky Mount Division, twelve miles north of Goldsboro and fourteen miles south of Wilson.

"By application filed in this proceeding the Applicant, Atlantic Coast Line Railroad Company, seeks to change its operation through Fremont for Trains Nos. 48 and 49 by making Fremont a flag stop for each of said trains; heretofore Fremont has been a regular stop for such trains. By making Fremont a flag stop, the Applicant proposes to continue stopping the two said trains at Fremont at any and all times when there are passengers to either get off or be taken on.

"Train No. 48 from Wilmington to Rocky Mount passes through Fremont at 6 :05 p.m. daily, and Train No. 49, operating in the opposite direction, that is from Rocky Mount to Wilmington, passes through Fremont at 10 :25 a.m. daily.

"The applicant proposes no change with reference to Trains Nos. 41 and 42, and expects to continue the stopping of each of these trains regularly at Fremont. Train No. 41, which it proposes to continue stopping at Fremont, proceeding from Rocky Mount to Wilmington, passes through Fremont at 3 :34 a.m., and Train No. 42, which it also proposes to continue stopping regularly, and proceeding from Wilmington to Rocky Mount, passes through Fremont at 10 :56 p.m. daily.

"The application of the Applicant to make these changes was vigorously protested by the citizens of Fremont, and those of the area surrounding Fremont, and by the Town of Fremont, a municipal corporation which has made itself a party to this proceeding."

Then the hearing commissioner after stating contentions of the parties, and reviewing the evidence offered, in the light of applicable statute, G.S. 62-47, came to the questions as to reasonableness of the application, and as to the convenience and necessity of the public at Fremont with respect to services afforded the public by trains Nos. 48 and 49.

And to the reasonableness of the request, the commissioner states the following: "The Applicant's trains must pass through Fremont each day. If it is not necessary for them to stop, the company will effect a small financial savings, and it can eliminate approximately five minutes time in the running time between Wilmington and Rocky Mount. There are no close connections at junction points involved, and it is admitted that there is now ample time to transfer passengers and to switch sleeping cars where connections are made. The only advantage the Applicant will gain will be in the saving of time, a small economy in expenses, and some added

convenience to passengers on its train who chafe at annoying frequent stops along the way. Such circumstances as these do not impress the Hearing Commissioner as being a material improvement in either service or operation of the trains involved, and he is led to the conclusion that the reasons for the Applicant seeking to effect the change are of little consequences. The evidence shows that Train No. 48 stopped an average of five times per month to pick up passengers at Fremont, and an average of 11 times per month to discharge passengers. Of course it may have been that on some stops when passengers were discharged others were picked up, and that thus one stop accounted for both purposes, but it would be fair to assume that on the average of five and eleven stops, totaling 16 stops, there would have been at least eight or ten necessary stops per month for Train No. 48; Train No. 49 handled an average of 43 passengers from Fremont and 18 to Fremont per month, and using the same reasoning it would appear that this train necessarily stopped an average of from 15 to 20 times per month. Under this reasoning it would appear that if this application is granted the Applicant would be forced to stop its trains approximately one-half of the days in each month. This being true it seems that the Applicant could not well afford to revise its schedules for a saving of time when there is uncertainty as to whether or not its trains will have to stop.

"The two trains in question herein are the only trains that serve Fremont at a reasonable hour of the day, and it would appear to the Hearing Commissioner that it would be far more reasonable for the Applicant to have requested making the station a flag stop for the other two trains, both of which pass through Fremont at late hours during the night."

Then as to convenience and necessity, the commissioner continues:

"On the other hand there is no evidence of any compelling need for the trains to make unnecessary stops when there are neither passengers to receive or to be discharged, and other than the fact that the change will cause a change in the delivery of mail and express, for which the Applicant is not responsible, the principal motive of the Town of Fremont, and its citizens for opposing this application is civic pride—they just do not want their fine town to become a "whistle stop." There is some inconvenience in the flagging of a train. If this station becomes a flag stop, more than likely such passenger traffic as now moves to and from Fremont will be diverted to other forms of transportation.

"The town has become accustomed to the service the railroad now provides, and when there is a need for such service, it depends upon the trains stopping. Upon a showing of no more advantage than that which appears under the evidence in this case, the Hearing Commissioner cannot conclude that this application is a reasonable improvement in service

sufficient to outweigh the small amount of public convenience and necessity that the trains now serve. Thus the Hearing Commissioner has concluded to deny the application."

Thereupon by order dated 2 July, 1952, the application was denied, and defendant Atlantic Coast Line Railroad Company in apt time filed exceptions to the report and recommended order of the hearing commissioner.

"EXCEPTION No. I. The Commissioner erred in finding and concluding that 'upon a showing of no more advantage than that which appears under the evidence in this case, the Hearing Commissioner cannot conclude that this application is a reasonable improvement in service sufficient to outweigh the small amount of public convenience and necessity that the trains now serve.'

"EXCEPTION No. II. The Commissioner erred in failing to find and conclude that applicant's request that it be permitted to change Fremont from a regular to a flag stop for Trains 48 and 49 is just and reasonable, and that public convenience and necessity do not require that Trains 48 and 49 stop regularly at Fremont.

"EXCEPTION No. III. The Commissioner erred in denying applicant's request that it be permitted to change Fremont from a regular to a flag stop for Trains 48 and 49."

Thereafter the commission, upon consideration of the exceptions, being of the opinion that the evidence offered at the hearing was sufficient to warrant the findings and order to which the exceptions are directed, entered an order on 9 September, 1952, overruling each of the exceptions, and making the findings and order of 2 July, 1952, the findings and order of the commission.

Thereafter the applicant, Atlantic Coast Line Railroad Company, petitioned the commission to rehear the matter, and to reverse and set aside the order of the commission, and for an order granting the application.

Thereupon, the commission recites that every contention made for a rehearing was presented and considered at the time of the hearing of the cause; and that the same contentions were presented to the commission at the time exceptions were filed to the report and recommended order of the hearing commission, 2 July, 1952, and overruled by the order of 9 September, 1952; and that upon consideration of the contentions now presented as grounds for a rehearing: "The commission refers to, adopts and re-affirms said order dated July 2, 1952," and "for reasons stated, the petition filed in this cause is hereby denied," under date 1 October, 1952.

Thereafter, the applicant, Atlantic Coast Line Railroad Company, in conformity with and pursuant to the provisions of Section 62-26.6 of the General Statutes of North Carolina, gave notice of appeal, and appealed

to the Superior Court in term time and to the Judge thereof from (1) the order of the commission of 2 July, 1952, denying its application, (2) the order of 9 September, 1952, overruling applicant's exceptions to, and adopting the order of 2 July, 1952, and (3) the order of the commission of 1 October, 1952, denying applicant's petition to rehear.

The appeal came on for hearing before the judge presiding at the April Term of the Superior Court of Wayne County, and the court having heard arguments of counsel, and "it appearing that there was a voluminous record of the cause," it was agreed in open court by counsel for the parties that judgment in the cause might be made by the judge outside of the district with the same force and effect as if in the district, and "the court having fully examined and considered the record in this cause, the briefs and arguments by counsel, and . . . being of the opinion that the order of the North Carolina Utilities Commission should be affirmed," entered judgment—affirming in all respects the order of 2 July, 1952, denying the application of the Atlantic Coast Line Railroad Company for permission to change Fremont, North Carolina, from a regular stop to a flag stop for its passenger trains 48 and 49, and further ordering that the application for permission to do so is denied.

Defendant, applicant, Atlantic Coast Line Railroad Company, excepted to the judgment so rendered, upon grounds stated, and appeals to Supreme Court.

*B. F. Aycock, J. Russell Kirby, and Dees & Dees for Town of Fremont, appellee.*

*Murray Allen and R. P. Upchurch for defendant, appellant.*

WINBORNE, J. The appellant, Atlantic Coast Line Railroad Company, in excepting to the judgment of the Superior Court from which this appeal is taken, enumerates and sets forth several grounds upon which it contends that error occurred in the court below. All of them come to this, that, upon consideration of the whole record, the orders of the Utilities Commission are unreasonable, and are unsupported by competent, material and substantial evidence.

The statutes governing procedure before the Utilities Commission prescribe the rules and extent of review on appeal from an order of the Commission. The statute, G.S. 62-26.10 provides that, on such appeal to Superior Court, the court shall review the proceeding without a jury; that such review shall be confined to the record as certified by the Commission to the court; and that the court may reverse or modify the decision of the Commission if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclu-

sions or decisions are unsupported by competent, material and substantial evidence in view of the entire record as submitted.

And this statute also provides that "Upon an appeal to the Superior Court . . . any . . . finding, determination, or order made by the Commission under the provisions of this chapter, shall be *prima facie* just and reasonable." See *Utilities Comm. v. R. R.*, 235 N.C. 273, 69 S.E. 2d 502.

Moreover, it is provided by statute G.S. 62-39 that the Utilities Commission has power to require all transportation companies to establish and maintain all such public service facilities and conveniences as may be reasonable and just. And in *Utilities Comm. v. R. R., supra,* this Court said that "the determination and order of the Commission in the performance of this duty must be considered *prima facie* as reasonable and just," but that this "does not preclude the transportation company affected from showing that the order was unsupported by competent, material and substantial evidence," citing *Utilities Comm. v. Trucking Co.*, 223 N.C. 687, 28 S.E. 2d 201.

In this connection it is stated in *Utilities Comm. v. R. R.*, 233 N.C. 365, 64 S.E. 2d 272, a case treating the subject of an application of the railroad to discontinue service at a certain station, this Court in opinion by *Devin, J.,* now *Chief Justice,* made this observation: "No absolute rule can be set up and applied to all cases. The facts in each case must be considered to determine whether public convenience and necessity require the service to be maintained or permit its discontinuance. The benefit to the one of the abandonment must be weighed against the inconvenience to which the other may be subjected."

Applying these provisions of the statute, as so interpreted by this Court, to the case in hand, the findings and conclusions and orders of the Commission, *prima facie* reasonable and just, appear to be supported by competent, material and substantial evidence. Hence, the judgment of the lower court affirming the order of the North Carolina Utilities Commission denying the application of the Atlantic Coast Line Railroad Company for permission to change Fremont, North Carolina, from a regular stop to a flag stop for its passenger trains numbers 48 and 49, is hereby

Affirmed.