STATE OF NORTH CAROLINA EX REL UTILITIES COMMISSION v. GULF-ATLANTIC TOWING CORPORATION.

(Filed 4 November, 1959.)

**1. Carriers § 1:   Utilities Commission § 2—**

Whether a carrier is a contract carrier or a common carrier is a question of law, but whether a particular carrier is acting as a common carrier or as a contract carrier is a question of fact, which, in proceedings before the Utilities Commission, is to be determined by the Commission.

**2. Utilities Commission § 5—**

On appeal from the Utilities Commission the Superior Court and the Supreme Court may not retry questions of fact, but the facts found by the Commission are conclusive unless they are not supported by competent, material, and substantive evidence in view of the entire record. G.S. 62-26.10(e).

**3. Carriers § 1—**

A carrier is a common carrier if it holds itself out to the public as engaged in the public business of transporting persons or property for compensation, and offers such service to all members of the public who desire such service so far as its facilities permit.

**4. Same—**

A private or contract carrier of goods is one who transports goods solely upon contract or a series of contracts with each individual shipper, and who does not hold himself out to the general public as ready to accept and carry all goods, but furnishes his services only to those with whom he sees fit to contract.

**5. Carriers § 1:   Utilities Commission § 2—   Evidence held to establish that respondent was a private carrier not subject to the jurisdiction of Utilities Commission.**

The evidence upon the entire record in this case is held to show that respondent transported petroleum products in bulk by tank barge solely by contract specifically negotiated with each particular shipper by competitive bids, that it exercised some discretion as to whom it would do business with and would not enter into any contract that would jeopardize its other contracts, with no evidence that it held itself out as willing to transport goods for all who might apply, or that it transported goods for anyone without first voluntarily entering into a specific contract for such carriage. *Held:* The finding of fact of the Utilities Commission that respondent's course of dealing was that of a common carrier is not supported by competent, material, and substantive evidence, and the judgment of the Superior Court is reversed with direction that the cause be remanded for dismissal by the Utilities Commission for want of jurisdiction.

HIGGINS, J., not sitting.

APPEAL by respondent from *Parker, J.,* February Civil Term, 1959, of NEW HANOVER.

This proceeding was initiated by the North Carolina Utilities Commission issuing and having served upon respondent a show cause order, requiring respondent to appear before it and show cause, if any it can, why it, as a carrier of petroleum products in intrastate and interstate commerce, should not submit to the jurisdiction of the Commission, obey its orders, rules and regulations, apply for a certificate of public convenience and necessity authorizing it to engage in such transportation in intrastate commerce, and file proper and appropriate tariffs.

Hereafter the North Carolina Utilities Commission will be called Commission, and the respondent will be designated Gatco. Gatco filed no pleading.

The show cause order was heard upon the evidence and exhibits of Gatco. We summarize the Commission's findings of fact and conclusions of law except where we quote the words of the Commission:

## FINDINGS OF FACT.

Gatco is authorized to do business in the State, and has offices in Wilmington, North Carolina, Norfolk, Virginia, and two cities in Florida. For about ten years it has been engaged in transporting petroleum products in bulk along the inland waterways of the State from points in the State to other points in the State by tank barges either pushed or pulled by tugboats. At the time of the hearing Gatco by contract with Esso Standard Oil Company was transporting petroleum products in bulk from Morehead City to Belhaven and Washington, North Carolina, and was also towing by contract with the Navy petroleum products from Beaufort to Cherry Point Air Station.

Gatco submits bids to various oil companies having bulk storage terminals on the coast of the State for the transportation of their petroleum products in bulk from such storage terminals along the inland waterways of the State to other places in the State. Such bids, when accepted, result in contracts between Gatco and the oil companies. The petroleum products are brought to the bulk storage terminals on the coast of the State by ocean going tankers.

Gatco has hauled petroleum products in bulk from one place in the State to another in the State for Gulf Refining Company, Texas Company, Esso Standard Oil Company, and the U. S. Navy. In addition, it has transported petroleum products from one terminal in Wilmington to another, and holds itself out to do such business.

"Gatco holds itself out to transport oil and petroleum products by barges for any person, firm or corporation upon call if it can agree on

contract terms and if such transportation will not interfere with its other contracts, and if it has the equipment available." x x x "Gatco holds itself out to move oil and petroleum products for compensation for any person, firm or corporation from points along the Coast in the State to other points along the inland waterways of the State, and Gatco engages in the business of furnishing such transportation for compensation for any person, firm or corporation with which it can agree upon a transportation price or compensation, and Gatco's course of dealing in business is that of a common carrier on the inland waterways of the State."

Gatco has never applied to the Commission for a certificate of public convenience and necessity, has never submitted itself to the jurisdiction of the Commission, and has never filed with the Commission any tariffs for the transportation of its cargoes.

## CONCLUSIONS OF LAW.

Gatco holds itself out, and is engaged as a common carrier in intrastate commerce in transporting for compensation petroleum products in bulk for all persons, firms, and corporations from one point in the State along the inland waterways of the State to other points in the State.

Before continuing its operations Gatco should apply to the Commission for a certificate of public convenience and necessity, and if it is granted, Gatco should file with the Commission appropriate tariffs, and otherwise comply with the regulations of the Commission.

Whereupon, the Commission entered an order enforcing its conclusions of law.

Gatco appealed from the order of the Commission to the Superior Court, and grouped the alleged errors of the Commission. The alleged errors are that there is no competent evidence to support the findings of fact and conclusions of law of the Commission that Gatco is a common carrier, and engaged in intrastate commerce, and subject to the jurisdiction of the Commission. The contention of Gatco being that it is a contract carrier, and engaged in interstate commerce along the inland waterways of the State.

The appeal was heard by Paul, J., at the May Term 1957 of the Superior Court of New Hanover County. Judge Paul's order recites that an examination of the transcript of the evidence in the proceeding shows that Gatco is engaged in several types of transportation, some of which is clearly interstate. Whereupon, he remanded the proceeding to the Commission to set out with exactness and particularity the business of Gatco adjudged to be intrastate, and subject to regulation by the Commission.

When the proceeding was again heard by the Commission, it found

these facts: Gatco transports 9,000 barrels of oil at least once each week from Morehead City, North Carolina, to Washington, North Carolina, and hauls petroleum products for Esso Standard Oil Company from Beaufort, North Carolina, to Cherry Point, North Carolina, and hauls petroleum products from Wilmington to Fayetteville, from Wilmington to Morehead City, from Morehead City to Belhaven. Gatco is engaged as a common carrier for hire in interstate and intrastate commerce in the State. Whereupon, the Commission reaffirmed its former order.

Gatco again appealed to the Superior Court, and grouped the alleged errors of the Commission. The alleged errors are substantially the same set forth by Gatco in its first appeal entries to the order of the Commission.

At the February Civil Term 1959 of New Hanover Superior Court Parker, J., overruled all of Gatco's exceptions, and affirmed the order of the Commission.

From this judgment Gatco appeals to the Supreme Court.

*Malcolm B. Seawell, Attorney General, and F. Kent Burns, Assistant Attorney General, for North Carolina Utilities Commission, appellee.*

*Rountree & Clark for Gulf-Atlantic Towing Corporation, Respondent, appellant.*

PARKER, J.   G.S. 62-30(1) and G.S. 62-122 confer upon the North Carolina Utilities Commission regulatory authority over the rates charged and the service given "by railroads, street railways, steamboats, canals, express and sleeping-car companies, and all persons, firms or corporations engaged in the carrying of freight or passengers or otherwise engaged as common carriers" in intrastate traffic in North Carolina.

In the brief filed by the Attorney General for the Commission it is said: "From a perusal of these two statutes (G.S. 62-30 and G.S. 62-122), it is seen that the jurisdiction of the Utilities Commission in this case is dependent upon a finding that Gatco is a common carrier engaged in the business of carrying freight." In respect to this statement in the brief see *Efland v. R. R.*, 146 N.C. 135, 59 S.E. 355.

Gatco assigns as error the ruling of the trial court sustaining the finding of fact of the Commission that it by its operations on the inland waterways of the State of North Carolina is a common carrier, and so holds itself out to the public. The contention of Gatco is that the Commission should have found as a fact that it is not a common

carrier by its operations on the inland waterways of the State, but a private contract carrier not subject to the jurisdiction of the Commission.

The real and practically the only question presented in this case, therefore, is whether Gatco operates as a common carrier of intrastate freight between points in this State along its inland waterways.

What constitutes a common carrier, and what constitutes a contract carrier, are questions of law, but whether the carrier is acting as a common carrier or as a contract carrier is a question of fact. The fact is to be determined, in proceedings of this kind, by the Commission. The question is often a question of difficulty. The Superior Court and the Supreme Court are not appellate courts from the Utilities Commission to retry questions of fact. Facts found by the Commission are not open in the Law Courts, unless the Commission shall find facts to exist "unsupported by competent, material and substantial evidence in view of the entire record as submitted." G.S. 62-26.10(e). If a factual finding as a basis for an order by the Commission is supported by competent, material and substantial evidence in view of the entire record, the finding is final. *Utilities Com. v. R. R.*, 235 N.C. 273, 69 S.E. 2d 502; *Utilities Com. v. Fox*, 236 N.C. 553, 73 S.E. 2d 464; *Utilities Com. v. R. R.*, 238 N.C. 701, 78 S.E. 2d 780.

The definition of a common carrier at common law seems to be clearly settled. A common carrier is one who holds himself out to the public as engaged in the public business of transporting persons or property for others for compensation from place to place, offering his services to such of the public generally as choose to employ him and pay his charges. The distinctive characteristic of a common carrier is that he undertakes as a business to carry for all people indifferently or to take anybody's freight. *Williams v. Manufacturing Co.*, 175 N.C. 226, 95 S.E. 366; The Cape Charles, 198 F. R. 346 (District Court, E. D. North Carolina, opinion by Connor, District Judge); *Washington ex rel Stimson Lumber Co. v. Kuykendall*, 275 U. S. 207, 72 L.Ed. 241; 9 Am. Jur., Carriers, sec. 4; 13 C.J.S., Carriers, sec. 3.

"Every common carrier has the right to determine what particular line of business he will follow, and his obligation to carry is coextensive with, and limited by, his holding out or profession as to the subjects of carriage" 9 Am. Jur., Carriers, p. 432.

A private carrier of goods (sometimes called a contract carrier) is one who makes an individual contract in a particular instance for the carriage of certain goods for another to a certain destination. The private carrier of goods does not hold himself out to the public as ready to accept and carry all goods of all who offer. His contract may

be for one carriage of freight or a series. Each act of transportation is a separate and individual act. It is not for the public convenience and necessity, but is a private transaction. The private or contract carrier may refuse to take the goods and refuse to contract for carriage. He is not bound to serve every person who may apply. *The Cape Charles, supra; Home Insurance Co. v. Riddell,* 252 F. 2d 1; *Public Utilities Com. v. Johnson Motor Transport,* 147 Me. 138, 84 A. 2d 142; 9 Am. Jur., Carriers, sec. 10; 13 C.J.S., Carriers, sec. 4.

"The distinction between a common carrier and a private or contract carrier has been frequently stated. Citing cases. A common carrier is one who holds himself out as furnishing transportation to any and all members of the public who desire such service in so far as his facilities enable him to perform the service, while a contract carrier does not furnish transportation indiscriminately but furnishes it only to those with whom he sees fit to contract." *Mt. Tom Motor Line, Inc. v. McKesson & Robbins, Inc.,* 325 Mass. 45, 89 N.E. 2d 3.

The General Assembly in G.S. 62-121.7(13) has defined a "common carrier by motor vehicle" as meaning "any person which holds itself out to the general public to engage in the transportation by motor vehicle in intrastate commerce of property or any class or classes thereof for compensation, whether over regular or irregular routes." In G.S. 62-121.7(14) it has defined a "contract carrier by motor vehicle" as meaning "any person which, under individual contracts or agreements, engages in the transportation, other than transportation referred to in paragraph (13), by motor vehicle of property in intrastate commerce for compensation." Similar definitions are set forth in the Bus Act of 1949 in respect to the transportation of passengers. G.S. 62-121.46(5) and (6). In respect to the provisions of G.S. 62-30(1) and G.S. 62-122, the General Assembly has defined neither a common carrier nor a contract or private carrier.

This proceeding was heard by the Commission on the evidence and exhibits of Gatco alone. The only witness testifying before the Commission was L. M. Winslow, Vice President of Gatco, who lives in Jacksonville, Florida. This is a summary of Mr. Winslow's testimony, necessary for a decision of this appeal, except where we quote his testimony.

Gatco bids on contract work, and transports the commodities it is successful in getting. The mechanics of getting a contract for hauling are as follows: Usually the customer invites a number of contract carriers to bid on commodities the customer wants hauled, stating the terms and conditions, and the contract carriers submit bids. In most cases other people bid also. Winslow does not know of any common carrier bidding on contracts for such hauling.

Gatco usually works for the various oil companies that have bulk storage terminals, and whom they have worked for before. Gatco has competitors in the bidding for contracts, who haul by barges and tugboats, as it does.

The equipment used in hauling petroleum products in bulk is not the equipment generally used by common carriers on water. Gatco has no published rates. Its rates are sent in on its contract bids. If it is the low bidder, and its bid is acceptable, it gets the work. It only works by contract. "We are the sole judge who we shall haul for and what our rates will be, and those we want to haul for and those we don't want to haul for. We do not have any authority from the Interstate Commerce Commission."

Gatco has hauled a load or two within the harbor of Wilmington, North Carolina, for the American Oil Company. It has hauled for Gulf Oil Company, Esso Standard Oil Company, the U. S. Navy and the Texas Company. It has not hauled for Cities Service Company, Phillips and Sinclair.

Mr. Winslow testified: "It wouldn't make any difference who called me if they were going to pay me. I would haul it. Even if the Commissioner asked me I would go down there and haul it after I found out what it was and whose feelings I was going to hurt. Right in that connection if Phillips, Sinclair, Cities Service or some of the other independents would want to do that same thing and had a volume movement along the coast to some inland port town or storage I would haul for them if I had the equipment available. In explanation of that statement that if I weren't afraid I would hurt somebody's feelings, what I meant was that I would want to know a little more about it than that because for instance the Esso Standard Oil Company has an Inland Water Department and I wouldn't want to offend the Inland Water Department of Esso. I have had letters from the Esso Standard Oil Company's Sales Department requesting quotations on the movement of petroleum products and that is what I meant by that. I have got to be a little careful not to step on the toes of people we have to work with. In other words, I would rather it would come from the Inland Waterways channel, through that department —the people we have to get along with. I say that our manner of operation was such that if you had oil at one terminal in Morehead and wanted to move it to another terminal and the money was showed to me and our terms of operation were met, I would take it down for you to Morehead just on the matter of you calling and wanting it moved, if you paid me. As to whether I would do that for anybody else I say that not very many people have an oil terminal these days. But from a practical standpoint that is what I am in business to do."

Later on Mr. Winslow testified: "We have at one time or another, and still will now, haul for any of those major companies or the shipper at those points under an agreement suitable to us and suitable to them. In other words, we hold ourselves out to serve them if we can come together on the terms and agree on the terms of service, the price they will pay and the volume."

The evidence is clear and undisputed that Gatco transports goods only by contract specifically negotiated with the particular shipper by means of submitting bids for the work. Gatco is the sole judge of those it wants to haul for, and those it does not want to haul for. Mr. Winslow testified: "I have got to be a little careful not to step on the toes of people we have to work with." He also testified: "I wouldn't want to offend the Inland Water Department of Esso." It seems the plain inference is Gatco would choose not to contract with any one that would interfere with its negotiating contracts with Esso. The evidence supports this finding of fact by the Commission: "Gatco holds itself out to transport oil and petroleum products by barges for any person, firm or corporation upon call if it can agree on contract terms and if such transportation will not interfere with its other contracts, and if it has the equipment available."

There is nothing in the record to indicate that Gatco held itself out as willing to transport goods for all who might apply, or that it would carry for any one without first voluntarily entering into a specific contract for such carriage. A study of the entire record shows that Gatco is a private or contract carrier as distinguished from a common carrier.

The finding of fact by the Commission that "Gatco's course of dealing in business is that of a common carrier on the inland waterways of the State," and its conclusion of law that "Gatco holds itself out, and is engaged as a common carrier in intrastate commerce in transporting for compensation petroleum products in bulk for all persons, firms, and corporations from one point in the State along the inland waterways of the State to other points in the State," are unsupported by competent, material and substantial evidence in view of the entire record as submitted.

The judgment below is reversed. The brief of the Commission states "the jurisdiction of the Utilities Commission in this case is dependent upon a finding that Gatco is a common carrier, etc." The Superior Court will remand the proceeding to the Commission, with a direction to the Commission to dismiss the order to show cause for lack of jurisdiction in the Commission, in accord with this opinion.

Reversed with Direction to Remand to Utilities Commission for Dismissal.

HIGGINS, J., not sitting.